IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROBERT THOMPSON, individually and on behalf of similarly situated individuals,**<br><br>Plaintiff,<br><br>v.<br><br>**BANNER LIFE INSURANCE COMPANY,**<br><br>Defendant. | Case No. 24-CV-01096-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of a Motion to Dismiss for Failure to State a Claim (Doc. 19) filed by Defendant Banner Life Insurance Company ("Banner"). Having been fully informed of the issues presented, this Court **GRANTS** Banner Life Insurance's Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Robert Thompson filed the instant suit in the Circuit Court for the Fourth Judicial Circuit in Effingham County, Illinois on October 30, 2023. *See Thompson v. Banner Life Ins. Co.*, No. 023LA32 (Ill. Cir. Ct.). Thompson brought this action as a putative Class Action Complaint on behalf of himself and other similarly situated individuals who applied for life insurance coverage within the applicable limitations period. (*See* Doc. 1, Ex. B). Thompson alleges that, when applying for life insurance with Defendant Banner, he was required to "answer questions concerning his family medical history, i.e. the manifestation of diseases or disorders in his family

members. Such questions included whether Plaintiff's family members had a history of high blood pressure, cancer, diabetes, heart disease, and other medical conditions." (*See* Doc. 1, Ex. B, ¶ 28). Thompson argues that this information is considered "genetic information" under the auspices of the Illinois Genetic Information Privacy Act, 10 ILL. COMP. STAT. 513/1 *et seq.* ("GIPA") such that he is entitled to recovery of statutory damages. (*See id.*, ¶¶ 29–32).

Banner removed this case to federal court pursuant to 28 U.S.C. § 1446 on April 12, 2024. (*See* Doc. 1). Banner first filed a Motion to Dismiss for Failure to State a Claim on May 31, 2024. (Doc. 13). Plaintiff Thompson filed an Amended Complaint (Doc. 16) in accordance with Federal Rule of Civil Procedure 15(a)(1) on June 13, 2024. (*See* Doc. 17). Banner filed the instant Motion on June 27, 2024. (*See* Docs. 19, 20). Plaintiff Thompson filed a Memorandum in Opposition on July 11, 2024 (Doc. 21) to which Banner replied (Doc. 22).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099

(7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Because the instant suit was filed in Illinois and both parties have applied Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012).

## ANALYSIS

GIPA was passed in 1998 as a means to serve the public interest via limitations on how information gleaned from genetic testing could be used because such information "can be valuable to an individual." GIPA § 5 (1998). Thompson brings this action purportedly pursuant to § 20(b) of GIPA, which states that "[a]n insurer shall not use or disclose protected health information that is genetic information for underwriting purposes." Thompson argues that "Plaintiff and the Class underwent medical physical exams performed by healthcare providers, during which questions regarding their family medical history, i.e. the manifestation of a disease or disorder

in family members were asked" and that "the third-party healthcare providers collected Plaintiff's and the other Class members' protected health information that is genetic information." (Doc. 16, ¶¶ 53–54). Thompson alleges that "Defendant then obtained and used this information for underwriting purposes by, *inter alia*, using it to assess Plaintiff's and the Class members' eligibility for life insurance coverage and compute their premiums" and, therefore, that "Defendant used Plaintiff's and the Class members' genetic information in violation of the GIPA." (*Id.*, ¶¶ 55–56). Thompson argues that because "[t]he information obtained from Plaintiff and the Class by Defendant is the type of information protected by GIPA[,] . . . Plaintiff and the other Class members have been aggrieved by Defendant's above violations of their statutorily protected rights to privacy in their genetic information as set forth in GIPA." (*Id.*, ¶¶ 58–59 (citing GIPA § 10)). He argues that these violations entitle him and the putative class members to "statutory damages of $15,000 for each reckless or intentional violation of GIPA and, alternatively, damages of $2,500 for each negligent violation of GIPA." (*Id.*, ¶ 60 (citing GIPA § 40(a)(1)–(2)).

In its Memorandum of Law in Support of the Motion to Dismiss (Doc. 20), Banner argues that Thompson has misread and misapplied GIPA because life insurance was not included within the definition of "insurers." (*See id.*, pp. 7–19). Banner argues that "[t]his is a straightforward statutory interpretation case" because Thompson "would have this Court apply Section 20(b) of [GIPA] to life insurance companies despite the plain language of the statute—clearly making known that it does not apply to life insurers." (*Id.*, p. 7). Banner argues that "this Court must predict how the Illinois Supreme Court would apply the statute." (*Id.*, p. 11 (citing *Pisciotta*

*v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007))). Banner states that "[t]he Illinois Supreme Court has held, as a fundamental canon of statutory construction, that "[t]he primary goal in interpreting a statute is to ascertain and give effect to the *intent of the legislature.*" (*Id.* (quoting *People v. Stewart*, 215 N.E.2d 752, 756 (Ill. 2022))). Banner argues that the language "*other* activities related to the creation, renewal, or replacement of a *contract of health insurance or health benefits*" indicates that the Illinois Legislature intended to limit GIPA to health insurers only. (*Id.*, p. 12 (quoting GIPA § 20(b)(4))). Banner also cites Seventh Circuit and Supreme Court caselaw indicating that a subsequent part of a statute can refer back to an earlier provision. (*Id.*, p. 13 (citing *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 459 (2022); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482 (7th Cir. 2019))). Banner also argues that "the definition of 'protected health information' limits Section 20(b)'s regulatory scope to insurers who use information for underwriting purposes that was 'created or received by a health care provider, health plan, employer, or health care clearinghouse.'" (*Id.*, p. 13 (citing GIPA § 10; 45 C.F.R. § 160.103)).

Besides the text of the statute itself, Banner also looks to GIPA's legislative history. (*See id.*, p. 15). Stating that "[t]he Illinois statute in question has been in force for many years," Banner argues that "[i]n 1997, when GIPA was proposed, GIPA's sponsors in the Illinois Senate and Illinois House of Representatives stated unequivocally that life insurance was excluded from GIPA's regulatory scope." (*Id.* (citing S. Tr. 90-26, Reg. Sess., at 44 (Ill. 1997); S. Tr. 90-27, Reg. Sess., at 142 (Ill. 1997); H.R. Tr. 90-43, Reg. Sess., at 184, 188–89, 190–91 (Ill. 1997))). Banner states that "Public Health Act 98-1046 amended GIPA to add the General Assembly's

express finding that '[l]imiting the use or disclosure of, and requests for, protected health information to the minimum necessary to accomplish an intended purpose, when being transmitted by or on behalf of a covered entity under HIPAA, is a key component of health information privacy.'" (*Id.*, pp. 15–16 (quoting 2014 Ill. Legis. Serv. P.A. 98-1046 (H.B. 5925) (emphasis added))). Banner argues that this means that Section 20(b) was not meant to apply to life insurers. (*See id.*, p. 16). Because "legislatures do not 'hide elephants in mouseholes,'" Banner argues that "there is only one plausible conclusion: Section 20(b) was intended to protect the disclosure of information protected under HIPAA in connection with the underwriting of *health* insurance policies and *health* benefit[s]. Section 20(b) was not intended to regulate the underwriting of *life* insurance policies." (*Id.*, p. 17 (quoting *People ex rel. Ryan v. Agpro, Inc.*, 824 N.E.2d 270, 274 (Ill. 2005))).

Finally, Banner argues that "[a]ccording to Plaintiff's construction of Section 20(b), in 2015, the Illinois General Assembly prohibited *life* insurers from conducting medical examinations or considering family medical history when issuing *life insurance policies*." (*Id.*, p. 18). "For over 125 years," Banner argues, "family medical history has been recognized in Illinois as material to the risk involved in underwriting life insurance policies. (*Id.* (citing *Bloomington Mut. Life Ben. Ass'n v. Cummins*, 53 Ill. App. 530, 539 (1894))). Banner argues that "Plaintiff's construction of Section 20(b), if correct, would have a widespread impact on life insurance markets. However, in the nine years and counting since the General Assembly enacted Section 20(b), the sale of life insurance in Illinois has continued as normal." (*Id.*, p. 19).

In response, Thompson argues that "Defendant's argument is contrary to the plain language of the statute and the fact that while the Illinois Legislature could have explicitly limited Section 20(b) to just health insurance policies as it did in other sections, it did not do so." (Doc. 21, p. 5). Thompson argues that "based on the plain text of 410 ILCS 513/20(b), the Court's inquiry should not be whether GIPA applies to life insurance or not – there are no limitations in the language to suggest to the contrary – but whether the 'protected information that is genetic information', as defined by HIPAA, was unlawfully used by an 'insurer' as stated in 410 ILCS 513/20(b)." (*Id.*, p. 7). To this point, Thompson argues first that "there is no limiting language in Section 20(b) that it only applies to health insurance." Thompson argues that "the rule [Banner] attempts to invoke is the 'reverse ejusdem generis' which means that in any given sentence that has a list of items, then any catch-all provided at the end applies to each of the items listed before it." (*Id.*, p. 9). Thompson argues that "Defendant does not cite to any case law how this rule would apply to separate and unique provisions like each of the subsections of 20(b)(1)–(4), where each subsection has a distinct and unique example of an 'underwriting purpose.'" (*Id.*). He also argues that "Defendant fails to explain how these 'underwriting' provisions in the context of health insurance are any different in the context of life insurance." (*Id.*). Thompson argues that "[l]ooking at the clear definition provided by HIPAA, under Plaintiff's well-pled allegations it is clear that Defendant's third-party healthcare provider engages in the provisioning of health care services including, for example, providing diagnostic services to assess the physical condition of an individual, as is alleged here by Plaintiff." (*Id.*, p. 10).

Next, Thompson argues that "[w]hile Defendant largely dismiss[es] the 2014 amendment to GIPA as nothing more than a formality to update the laws to be coextensive with HIPAA, the amendment actually expanded the scope of the statute so that it would now also regulate 'covered entities,' 'health care operations,' 'health care providers,' and other health-related persons and entities defined by and regulated by HIPAA." (*Id.*, p 12 (citing Doc. 20, pp. 9–10)). He argues that "the Legislature's intent, based on the statutory text, was to only adopt these definitions for the purposes of GIPA, rather than to limit the applicability of GIPA to only HIPAA covered-entities as Defendant wrongfully suggests." (*Id.*, p. 13 (citing Doc. 20, pp. 9–10)). Thompson states that he "is not bringing any claims under HIPAA, and as discussed above, GIPA only borrows definitions from HIPAA. Further, if the Illinois Legislature wanted to limit Section 20(b) to just HIPAA 'covered-entities', it would have limited Section 20(b) in the same manner as it limited 20(a) and 20(c)." (*Id.*, p. 13). "Instead, Section 20(b) only borrows HIPAA's definition of 'protected health information' and 'genetic information' and nothing in GIPA suggests that 20(b) only applies to HIPAA-regulated entities." (*Id.*). Thompson argues that "[i]f the Illinois Legislature intended to limit 513/20(b) to just a health plan it would have said so." (*Id.*, p. 14 (citing *Bd. of Educ. Of Richland Sch. Dist. No. 88a v. City of Crest Hill*, 2020 IL App (3d) 190225, ¶ 33, *aff'd*, 2021 IL 126444, ¶ 33; *Indian Valley Golf Club, Inc. v. Vill. of Long Grove*, 135 Ill. App. 3d 543, 552 (2d Dist. 1985))).

Thompson also argues that "the new proposed amendments only demonstrate the Legislature's intent that GIPA's protections against life insurers using genetic information, as Section 20(b) already provides, should be further expanded to section

(a), section (c), and a new proposed section (f)." (*Id.*, p. 15). Finally, Thompson argues that Banner's argument that because "life insurance application forms with questions about family medical history have been regularly approved for use within the state of Illinois, GIPA must necessarily be inapplicable to life insurers" is belied by the plain text of the statute. (*Id.*, p. 16).

In its Reply (Doc. 22), Banner emphasizes that "[t]he list in Section 20(b) is precisely like the lists in the cases cited in Banner Life's Memorandum of Law" and "[a]ccordingly, the catchall phrase in Section 20(b) modifies and limits what comes before it, and in this instance the 'underwriting purposes' regulated by Section 20(b) apply to the underwriting of contracts of health insurance or health benefits." (*Id.*, p. 5 (citing Doc. 20, pp. 12–13)). Banner argues that this Court should follow the holding in *Reynolds v. State Farm Life Ins. Co.*, No. 2023-LA-000465 (Ill. Cir. Ct. June 5, 2024), in which the trial judge concluded that "[t]he Court finds that Section 20(b) does not apply to life insurance underwriting. Taken as a whole, read in context, giving affect to all of its provisions, I don't believe it applies to life insurers." (Doc. 22, Ex. A, pp. 24–28, 35). Banner also argues that "this Court need not look to legislative intent to interpret the language of Section 20(b)" because "the language of Section 20(b) is unambiguous." (*Id.*, p. 6 (citing *People v. Easley*, 519 N.E.2d 914, 916 (Ill. 1988)). Additionally, Banner argues that "the Illinois legislature used the word 'insurer' to narrow the scope of Section 20(b) to regulate only one of the seventeen types of 'health plans' regulated by HIPAA." (*Id.*, p. 7). Banner also argues that "it is Plaintiff's obligation to show that the statute applies to life insurance underwriting"

and that Thompson "has the law backwards" in alleging that Banner's argument is "some affirmative defense." (*Id.*).

Considering the above, the first question before the Court is whether or not a family medical questionnaire qualifies as "genetic information" in accordance with GIPA. Recall that GIPA expressly adopts the definition of genetic testing "ascribed to it under HIPAA, as specified in 45 C.F.R. § 160.103." GIPA § 10. Section 160.103 states that

> Genetic information means: . . . (i) The individual's genetic tests; (ii) [t]he genetic tests of family members of the individual; (iii) The manifestation of a disease or disorder in family members of such individual; or (iv) Any request for, or receipt of, genetic services, or participation in clinical research which includes genetic services, by the individual or any family member of the individual.

The Supreme Court has expressly stated that "[w]hen Congress takes the trouble to define the terms it uses, a court must respect its definitions as 'virtually conclusive.'" *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) (quoting *Sturgeon v. Frost*, 587 U.S. 28, 56 (2019)); *see Garland v. Cargill*, 602 U.S. 406, 428 (2024) (footnote omitted) ("[I] is never our job to rewrite . . . statutory text under the banner of speculation about what Congress might have done." (quoting *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017)).

As an additional data point, the U.S. Equal Employment Opportunity Commission states that genetic information "includes information about an individual's genetic tests and the genetic tests of an individual's family members, as well as information about the manifestation of a disease or disorder in an individual's family members (i.e. family medical history)." *Genetic Information Discrimination*,

U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://www.eeoc.gov/genetic-information-discrimination (last visited July 16, 2024). "Family medical history is included in the definition of genetic information because it is often used to determine whether someone has an increased risk of getting a disease, disorder, or condition in the future." *Id.* Thus, it is clear that "genetic information" by definition includes the family medical questionnaires issued by Banner to Thompson.

However, when moving to the provision hotly debated by the parties, it is clear that GIPA was meant to apply to accident insurance and to health insurance and not to life insurance. First, the definitions section of the statute states that "'Insurer' means (i) an entity that is subject to the jurisdiction of the Director of Insurance and (ii) a managed care plan." GIPA § 10. Note that this definition does not state that an insurer must be *either* subject to the jurisdiction of the Director *or* a managed care plan; it states that an insurer must be subject to *both*. "Managed care plan" is defined as "a plan that establishes, operates, or maintains a network of health care providers that have entered into agreements with the plan to provide health care services to enrollees where the plan has the ultimate and direct contractual obligation to the enrollee to arrange for the provision of or pay for services." *Id.* This definition does not include life insurance providers, who are not governed by a managed care plan.

Moving to the hotly debated section of GIPA at issue (§ 20), the plain language of the statute states that "[a]n insurer may not seek information derived from genetic testing for use in connection with a policy of accident and health insurance." GIPA § 20(a). This focus is carried through into section 20(c). *See id.* § 20(c) ("An insurer may consider the results of genetic testing in connection with a policy of accident and

health insurance if the individual voluntarily submits the results and the results are favorable to the individual."). While §§ 20(b) and 20(d) use the word "insurer" without reference to "accident and health insurance" as written in §§ 20(a) and (c), the canon of ejusdem generis applies here to indicate that the meaning of "insurer" in §§ 20(b) and 20(d) is limited to "accident and health insurance" only. *See, e.g.*, *United States v. Sec. Mgmt. Co.*, 96 F.3d 260, 265 (7th Cir. 1996). Moreover, even though Thompson argues that "insurer" should have his broader definition, § 10 of GIPA expressly defines "insurer" as including a "managed care plan." *See id.* § 10. If the Illinois Legislature had wished to include life insurers in this definition, they would have expressly done so. Their failure to do so indicates that they did not intend for GIPA to be applied to life insurers as Thompson alleges here. Thompson's attempt to expand the definition of "insurer" when the statute clearly defines it and uses the narrow definition in multiple places borders on frivolity.

The Court notes that this lawsuit is one of various purported class action lawsuits that have recently sought to include life insurance medical history questionnaires within GIPA's ambit. *See* Brian I. Hays & Michael J. McMorrow, *New Illinois Genetic Information Privacy Act Class Actions Against Life Insurers Bark Up the Wrong Family Tree*, EMP. BENEFIT PLAN REV., Vol. 78, Feb. 2024). Moreover, this action is one of seven filed by the same law firm. (*See* Doc. 20, p. 7 n.1 (citing *Anderson v. Am. Gen. Life Ins. Co.*, No. 24-cv-03684 (N.D. Ill.) (motion to dismiss filed May 28, 2024); *Johnson v. Pac. Life Ins. Co.*, No. 24-cv-01057 (N.D. Ill.) (motion to dismiss filed Apr. 11, 2024); *Miller v. Mass. Mut. Life Ins. Co.*, No. 24-cv-00982 (N.D. Ill.) (voluntarily dismissed by plaintiff on June 4, 2024); *Thompson v. Prudential Ins. Co.*,

23-cv-03904 (S.D. Ill.) (motion to dismiss filed Mar. 27, 2024); *Biesen v. Nw. Mut. Life Ins. Co.*, 2023-CH-09329 (Ill. Cir. Ct.) (dismissed on Apr. 18, 2024); *Reynolds v. State Farm Life Ins. Co.*, No. 2023-LA-000465 (Ill. Cir. Ct.) (order issued in favor of life insurer on Jun. 5, 2024). Like in these other lawsuits, Thompson attempts to broaden GIPA's scope to initiate a deluge of class action lawsuits against life insurers.

The Court is not convinced by Thompson's arguments for a broader meaning of "insurer." As discussed *supra*, the terms in § 10 are clearly defined as excluding life insurance and multiple provisions in § 20 expressly exclude life insurance. *See* GIPA §§ 10, 20. Section 20 applies the specific bounds of "accident and health insurance" and does not include any other forms of insurance. *See id.* § 20(a), (c). Moreover, the legislative history and lack of lawsuits in the nine years since § 20(b) was implemented indicates that Thompson's application of GIPA was not intended. In absence of any caselaw from the Seventh Circuit in support of Thompson's argument, the Court declines to vastly expand GIPA to include tort lawsuits against life insurance companies using family medical history questionnaires like that provided by Thompson to Banner as part of his life insurance application. If the Illinois Legislature intended for life insurance companies to be included within the ambit of GIPA, they would have expressly included them within §§ 10 and 20; the failure to do so indicates that the omission was intentional.

## CONCLUSION

For the reasons set forth above, Defendant Banner Life Insurance Company's Motion to Dismiss (Doc. 19) is **GRANTED**. Because Plaintiff Thompson cannot state a claim for relief under the Illinois Genetic Information Privacy Act and, therefore,

because further amendment of his Complaint would be futile, this action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:  August 5, 2024**

**s/ *Stephen P. McGlynn*** 
**STEPHEN P. McGLYNN** 
**U.S. District Judge**
